UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., </br></br>Plaintiff, </br></br>v. </br></br>DEYOUNG FAMILY ZOO, </br></br>Defendant. | Case No. </br></br>EXPEDITED CONSIDERATION REQUESTED |

## MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS

People for the Ethical Treatment of Animals, Inc. ("PETA"), by and through its attorneys, pursuant to Federal Rule of Civil Procedure 45, moves for an order compelling nonparty DeYoung Family Zoo (the "Zoo") to comply with subpoenas issued and served by PETA out of the Eastern District of Missouri in the matter of *Missouri Primate Foundation et al. v. People for the Ethical Treatment of Animals, Inc. et al.*, Case No. 4:16-CV-2163-CDP. PETA and the Zoo consent to the transfer of this Motion to the issuing court. In support of this Motion, PETA states as follows:

1.  PETA is a counterclaimant in the underlying action referenced above and styled as *Missouri Primate Foundation et al v. People for the Ethical Treatment of Animals, Inc. et al.*, Case No. 4:16 CV 2163 CDP (hereinafter "MPF Litigation"). [Declaration of Jared Goodman (Dec. 17, 2018) ("Goodman Decl."), ¶ 1.][1]

2.  In the MPF Litigation, PETA and its co-counterclaimant (together, "Plaintiffs") allege that counterclaim defendants Missouri Primate Foundation and Connie Braun Casey (together, "Defendants") have illegally "taken" endangered chimpanzees in violation of the

---

[1] All references to docket entries refer to the MPF Litigation.

Endangered Species Act ("ESA") in numerous ways, and seek an injunction prohibiting further mistreatment of these animals. [Goodman Decl. ¶ 1, Ex. A (ECF No. 31).]

3. During the ESA's mandatory 60-day waiting period between Plaintiffs' service of their notice of intent to sue and filing suit, Defendants removed three of the subject chimpanzees to the Zoo—despite being fully aware of the need to preserve this evidence for the impending ESA litigation. [*Id.* ¶ 46.] Defendants then preemptively sued Plaintiffs on December 30, 2016. [ECF No. 1]. Defendants' claims have since been dismissed and only Plaintiffs' ESA counterclaims against Defendants remain at issue. [ECF No. 56].

4. After learning of the first transfer of three chimpanzees, Plaintiffs' counsel wrote to then-counsel for Defendants regarding the improper transfer and seeking an assurance that no additional chimpanzees would be moved without written approval from the Court or settlement. [Goodman Decl. ¶ 2, Ex. B.] One week later, Defendants transferred two more chimpanzees to the Zoo. [*Id.* ¶ 4, Ex. D.]

5. The Eastern District of Missouri has found that the current conditions of the five chimpanzees who were transferred to the Zoo remain relevant to Plaintiffs' claims. [ECF No. 56.] Indeed, the physical condition of the chimpanzees remains central to Plaintiffs' "take" claims both in relation to the manner in which they were held by Defendants, and to whether the transfers brought about any further "take" by Defendants.

6. The Eastern District of Missouri has further acknowledged "there is no evidence about the conditions under which they are currently held" because "PETA has been unable to obtain the evidence." [ECF No. 132.]

7. On June 20, Plaintiffs served the Zoo with subpoenas to produce documents, to permit inspection of the Zoo, and to testify at a deposition, specifically with respect to the five chimpanzees and to PETA. [Goodman Decl., ¶ 11, Ex. I.] The subpoenas seek information relating to the transfer of the chimpanzees, their condition at the time of the transfer, and the current conditions in which they are held and care they receive. [*Id.*]

8. On June 26, the Zoo's then-counsel served objections to the subpoenas, including that the Zoo "objects to any inspection, deposition or production of documents, without a fully-executed Protective Order in place …." [*Id.* ¶ 12, Ex. J.]

9. After conferring regarding the Zoo's objections, substantial negotiations regarding the scope of a protective order and the unreasonable provisions demanded by the Zoo, and the Zoo's delays, on October 3, the Zoo advised that it would not allow an in-person inspection of certain areas in which the chimpanzees are held. [*Id.* ¶¶ 13-16, Exs. K-M.] The Zoo's then-counsel did not respond to PETA's reply. [*Id.* ¶¶ 17-18, Ex. N.]

10. The Zoo has since retained a third new attorney. The parties conferred on November 7, 2018, at which time the Zoo's counsel acknowledged Plaintiffs' right to certain records, a deposition, and inspection, and the need to resolve it promptly, and stated that he would speak with the Zoo and respond by the end of that week. [*Id.* ¶ 20.] Despite following up, Plaintiffs have still received no further substantive response or agreement from the Zoo, necessitating this Motion. [*Id.*]

11. Rule 45 of the Federal Rules of Civil Procedure provides, in relevant part, "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P 45(d)(2)(B)(i).

12. The Zoo is located in Wallace, in Menominee County, Michigan, which is within this District. Accordingly, this Court is the proper venue to enforce the subpoena.

13. Rule 45 further provides, "The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

14. The Zoo has refused to comply with the subpoenas at all without a protective order, prevented agreement on the scope of a protective order during four months of negotiations, demanded that the inspection be substantially restricted, and then stopped

3

negotiating entirely. The Zoo has not complied with the subpoenas in any respect without offering any legitimate excuse for its failure.

15. In accordance with Local Civil Rule 7.1(d), PETA has conferred extensively with the Zoo's counsel regarding this Motion. [Goodman Decl. ¶¶ 5-21.] The Zoo opposes the relief sought in this Motion and agrees that the dispute cannot be resolved in a timely manner absent the Motion. Additionally, pursuant to Federal Rule of Civil Procedure 45(f), the Zoo consents (indeed, strongly prefers) that this Motion be transferred to the issuing court, the Eastern District of Missouri. [*Id.* ¶ 21.]

16. In accordance with Local Civil Rule 7.1(a), PETA has filed contemporaneously herewith a supporting memorandum.

17. Expedited consideration is requested because PETA requires the documents, deposition, and inspection to allow its experts time to prepare their pre-trial reports, which are due February 1, 2019.

WHEREFORE, PETA respectfully requests that this Court issue an order:

a. Compelling the Zoo to produce any and all documents in its possession or control that are responsive to the subpoena by December 28, 2018;

b. Compelling the Zoo to allow PETA to inspect the Zoo by January 11, 2019;

c. Compelling the Zoo to produce a representative for deposition by January 25, 2019.

Dated: December 18, 2018                    Respectfully submitted,

/s/ Jonathan B. Frank
Jonathan B. Frank (Michigan Bar No. 42656)
Maddin, Hauser, Roth and Heller, PC
28400 Northwestern Hwy., 2nd Fl.
Southfield, MI 48034
Telephone: (248) 208-0715
Facsimile: (248) 359-6186
JFrank@maddinhauser.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on December 18, 2018, I caused a copy of the foregoing Motion to Compel Compliance with Subpoenas, Memorandum in Support of Motion to Compel Compliance with Subpoenas, and Supporting Declaration to be served on the following corporation, by mailing it to the corporation's known address and registered address for service, pursuant to Federal Rule of Civil Procedure 5(b)(2)(C):

>DeYoung Family Zoo
>N5406 County Road 577
>Wallace, MI 49893

A courtesy copy of these documents were also e-mailed to the corporation's counsel.

/s/ Jonathan B. Frank

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. |
| DEYOUNG FAMILY ZOO, a corporation, | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
COMPLIANCE WITH SUBPOENAS

In the underlying action ("MPF Litigation"), People for the Ethical Treatment of Animals, Inc. ("PETA") and its co-counterclaimant (together, "Plaintiffs") allege that counterclaim defendants Missouri Primate Foundation and Connie Braun Casey (together, "Defendants") have illegally "taken" endangered chimpanzees in violation of the Endangered Species Act ("ESA") in numerous ways, and seek an injunction prohibiting further mistreatment of these animals. After Defendants were notified of Plaintiffs' impending claims and during the pendency of the MPF Litigation, Defendants transferred five of the sixteen chimpanzees at issue in the case from Festus, Missouri, to the DeYoung Family Zoo (the "Zoo"), in Wallace, Michigan.

Plaintiffs served the Zoo with two subpoenas—to produce documents and to permit inspection of the Zoo, and to testify at a deposition, specifically with respect to the five chimpanzees who were transferred from Defendants to the Zoo. PETA requires this discovery so that Plaintiffs' representatives and consultant experts may observe, and analyze the prior and current conditions of, these chimpanzees. The physical condition of the chimpanzees remains central to Plaintiffs' "take" claims both in relation to the manner in which they were held by Defendants, and to whether the transfer brought about any further "take" by Defendants. PETA requires these observations to allow its experts time to prepare their pre-trial reports, which are due February 1, 2019. After extensive discussion with the Zoo's initial counsel, replacement counsel, and subsequent replacement counsel in an effort to avoid the need to compel compliance with the subpoenas, PETA was left with no choice but to file this Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The MPF Litigation

On or before November 12, 2016, Defendants received Plaintiffs' notice of violation and intent to file suit pursuant to Section 11(g)(2)(A)(i) of the ESA, for keeping chimpanzees in conditions that constitute an unlawful "take." [ECF No. 1-1].[1] During the mandatory 60-day

---

[1] All references to docket entries refer to the MPF Litigation.

waiting period between Plaintiffs' service of the notice and filing suit, Defendants removed three of the subject chimpanzees to the Zoo—despite being fully aware of the need to preserve this evidence for the impending ESA litigation. [ECF No. 31 at ¶ 46]. Defendants then preemptively sued Plaintiffs on December 30, 2016. [ECF No. 1]. Defendants' claims have since been dismissed [ECF No. 56], and only Plaintiffs' ESA counterclaims against Defendants [ECF No. 31] remain at issue.

### B. The Transfers

After learning of the first transfer of three chimpanzees, Plaintiffs' counsel wrote to then-counsel for Defendants, Kurtis Reeg, on July 18, 2017. [Declaration of Jared Goodman (Dec. 17, 2018) ("Goodman Decl."), ¶ 2, Ex. B.] Citing the applicable law, Plaintiffs' counsel reminded Reeg of his clients' duty to preserve evidence and alerting him that the chimpanzees were evidence in the lawsuit, "and their unilateral transport to other facilities—and any similar future transports—effectively prevents Plaintiffs from obtaining key evidence needed to support their claims" in the MPF Litigation. [*Id.*] Plaintiffs also sought assurances that Defendants will not transfer any other chimpanzees "without prior written approval of the Court or unless and until the parties reach a settlement regarding their transfer to a reputable sanctuary." [*Id.*] On July 20, 2017, Reeg responded, in part: "[M]y clients and I think we know what our preservation obligations are and that we have complied with the same." [*Id.* ¶ 3, Ex. C.] Notwithstanding Plaintiffs' warning and Defendants' counsel's assurance, one week later, Defendants transferred two more chimpanzees to the Zoo. [*Id.* ¶ 4, Ex. D.] In all, five of the subject chimpanzees are now held at the Zoo.

### C. The Centrality of the Evidence

The conditions of the chimpanzees and the manner in which they are confined and treated are central to Plaintiffs' claims. Among other things, Plaintiffs allege that the subject chimpanzees are held "in barren and unsanitary enclosures in which they are inhumanely deprived of the social contact, physical space, and environmental enrichment necessary to engage in species-typical behaviors ... that are crucial to their well-being" and "are denied an

3

adequate diet and regular veterinary care." [ECF No. 23, ¶ 4.] These conditions "harm" and "harass" the chimpanzees in violation of the ESA's "take" prohibition by injuring them and "by causing them psychological harm, preventing them from carrying out their natural behaviors, and exposing them to a significant risk of physical illness and injury." [*Id.*]

The Eastern District of Missouri has already found that the *current* conditions of the chimpanzees who were removed from the Missouri facility are relevant to Plaintiffs' claims. In the Court's denial of Defendants' motion to dismiss, it rejected the argument that the transfer of a subject chimpanzee to another facility mooted Plaintiffs' claims with respect to that chimpanzee. The Court reasoned, in part, that "the transfer does not render the case moot as it is unknown whether his current conditions are in violation of the ESA," and therefore whether Defendants are liable for continuing violations. [ECF No. 56.]

Second, Plaintiffs moved for sanctions for Defendants' spoliation of evidence in transferring the chimpanzees. [ECF Nos. 66-67.] In response to this motion, Defendant Casey argued that there has been no prejudice because, "To the extent ... Plaintiffs complain that they cannot inspect the actual chimpanzees [at the Zoo] to determine their care, this is just not true," and because their current conditions no longer violate the ESA. [ECF No. 82.] In denying the motion for sanctions, the Court further noted that "there is no evidence about the conditions under which they are currently held," because "PETA has been unable to obtain the evidence to show spoliation" [ECF No. 132], clearly demonstrating substantial prejudice to Plaintiffs.

Accordingly, the transfer of the five chimpanzees and the conditions in which they are currently held remain specifically at issue in the MPF Litigation. Plaintiffs cannot obtain information regarding the chimpanzees' conditions from any other source, and despite having requesting detailed information regarding the transfers from the parties, have received none.

**D. The Subpoenas**

On May 15, 2018, Plaintiffs served the Zoo with subpoenas to produce documents, to permit inspection of the Zoo, and to testify at a deposition, specifically with respect to the five chimpanzees and to PETA. [Goodman Decl., ¶ 5, Ex. E.] The subpoenas sought information

4

relating to the transfer of the chimpanzees, their condition at the time of the transfer, and the current conditions in which they are held and care they receive. [*Id.*] On May 21, the Zoo objected to the subpoenas' demand to produce documents, and on May 29, to the deposition and inspection. [*Id.* ¶ 6, Ex. F.] Plaintiffs' counsel conferred with the Zoo's then-counsel, Brian Shank, on June 6. [*Id.* ¶ 7.] The parties agreed that Plaintiffs would serve amended subpoenas to address concerns expressed by the Zoo, and in an effort to avoid the need to compel compliance. [*Id.*]

On June 8, Plaintiffs promptly sent amended subpoenas (hereinafter, the "Subpoenas") to Shank and requested confirmation that he would accept service on behalf of the Zoo. [*Id.* ¶ 8, Ex. G.] On June 13, Shank responded that the firm was "not able to accept service of the amended subpoenas on behalf of the DeYoung Family Zoo." [*Id.* ¶ 9, Ex. H.] After several attempts at service, during which the process server was informed that the owner and registered against for the Zoo was unavailable and no one on the premises was authorized to accept service, the Subpoenas were successfully served on June 20. [*Id.* ¶ 11, Ex. I.] On June 26, the Zoo's subsequent counsel, Patrick Greeley, served objections to the Subpoenas, including that the Zoo "objects to any inspection, deposition or production of documents, without a fully-executed Protective Order in place ...." [*Id.* ¶ 12, Ex. J.] Counsel for the parties conferred regarding the Zoo's objections on June 29, and on July 1, Plaintiffs provided a draft confidentiality and nondisclosure agreement at the Zoo's request. [*Id.* ¶ 13.] On July 10, Greeley responded that it would not allow the inspection to go forward on the subpoenaed date because "the Zoo had been unable to obtain an expert," as it wished to do. [*Id.* ¶ 14, Ex. K.] The Zoo also sent substantial revisions to the draft agreement that can fairly be described as draconian, unsupported by reason, and perhaps intended to deter the inspection—including, but not limited to, joint and several liability for the Plaintiffs and Defendants should any party breach the agreement, liquidated damages of $200,000 for any breach, and that counsel could not be present during the inspection of the chimpanzees. [*Id.*] After further correspondence, on July 25, Greeley informed Plaintiffs that "it will likely take more time to complete" the agreement because "[o]ur contact at the zoo,

5

the person in charge of managing the Zoo and compliance with federal and state law," was admitted to the hospital with pneumonia. [*Id.* ¶ 15, Ex. L.]

After additional negotiation regarding the scope of the agreement, on October 3, the Zoo took the position that Plaintiffs' experts would not be permitted to observe the chimpanzees in person at all in the indoor enclosures in which they are held because, the Zoo asserted, the inspection would violate the federal Animal Welfare Act. [*Id.* ¶ 16, Ex. M.] On October 15, Plaintiffs explained to the Zoo its erroneous interpretation of the law, and why alternative proposals would be burdensome and inadequate. [*Id.* ¶ 17, Ex. N.] Plaintiffs received no response from Greeley. [*Id.* ¶ 18.]

On November 5, 2018, a third new attorney for the Zoo, Brian McChesney, contacted Plaintiffs' counsel to request a conference to discuss the Subpoenas. [*Id.* ¶ 19, Ex. O.] Counsel for Plaintiffs and the Zoo conferred on November 7, during which McChesney acknowledged Plaintiffs' right to certain records, a deposition, and inspection, the need to resolve it promptly, and stated that he would speak with the Zoo and respond by the end of that week. [*Id.* ¶ 20.] Despite following up, Plaintiffs have still received no further response or agreement from the Zoo, necessitating this Motion. [*Id.*]

## II. GOOD CAUSE EXISTS TO COMPEL COMPLIANCE WITH THE SUBPOENAS

The Court should compel compliance with the Subpoenas because they are the sole means by which PETA can obtain access to this critical evidence, they are properly within the scope of discovery, the Zoo's responses to the Subpoenas contains improper boilerplate and unsupported objections, and the Zoo's objections are otherwise without merit.

### A. The Discovery is Necessary to Ensure PETA Has Access to the Evidence

"A court 'may order discovery of any matter relevant to the subject matter involved in the action' upon a showing of 'good cause.'" *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-CV-11500, 2013 WL 10936871, at *3 (E.D. Mich. Nov. 26, 2013) (quoting Fed. R. Civ. P. 26(b)(1)). Given the Zoo's objections and unreasonable agreement it sought to impose on the

6

parties to the MPF Litigation, this court-ordered discovery is the only way PETA will ever be granted access to the chimpanzees and the conditions in which they are held, which remain at issue in the MPF Litigation. While producing these documents, sitting for a deposition, and an inspection is unlikely to negatively impact the Zoo, if PETA is denied access to this information, it will be severely prejudiced. Despite substantial efforts, Plaintiffs cannot obtain this information from any other source. Critically, to determine the scope of the impact of Defendants' conduct, Plaintiffs' experts must directly observe the chimpanzees to have an adequate opportunity to observe their behaviors and how they interact with each other and their environment. In short, the requested discovery is necessary to ensure PETA is not further prejudiced in the MPF Litigation.

### B. The Subpoenas Are Within the Scope of Permissible Discovery

The Federal Rules of Civil Procedure define the scope of discovery as non-privileged material "that is relevant to any party's claim or defense and proportional to the case," considering, among other things, the parties' relative access to the information and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b). "[T]he federal rules pertaining to discovery are framed in very broad terms so that parties may prepare their cases." *Haworth, Inc. v. Steelcase, Inc.*, No. 1:89 CV 373, 1993 WL 489704, at *2 (W.D. Mich. May 13, 1993). The bounds of permissible discovery contemplated by Rule 26(b) also govern third-party discovery sought through Rule 45—i.e., "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules." Fed. R. Civ. P. 45, 1970 Advisory Committee Note; *see also* 9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure 3rd § 2452, p. 393 (2008) ("Today, despite the elimination of specific references within the amended text of Rule 45, Rule 26 still governs the scope of discovery."); *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) ("Rule 26(b) applies equally to discovery of nonparties" (citation omitted)).

Rule 34(a)(1) provides that a party may request the production and inspection of "any designated documents or electronically stored information—including writings, drawings,

graphs, charts, photographs, sound recordings, images, and other data or data compilations, and "any designated tangible things." Rule 34(a)(2) further provides that a party may request "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." These are precisely what PETA has done here.

### C. The Zoo's Objections to the Subpoenas Are Improper Boilerplate

The Zoo has served eleven objections to the Subpoenas, several of which merely state the legal principle on which a proper objection might be based, and others which purport to assert some factual basis for the objection that is facially false or otherwise insufficient. These boilerplate objections should be considered waived.

"A 'boilerplate' objection is one that is invariably general; it includes, by definition, 'ready-made or all-purpose language that will fit in a variety of documents.'" *Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) (quoting *Boilerplate*, Black's Law Dictionary (10th ed. 2014)). An objection is boilerplate "'when it merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.'" *Id.* (citation omitted). "The use of boilerplate objections 'obstructs the discovery process, violates numerous rules of civil procedure and ethics, and imposes costs on litigants that frustrate the timely and just resolution of cases.'" *In re Haynes*, 577 B.R. 711, 724 (Bankr. E.D. Tenn. 2017). Accordingly, "Boilerplate objections are legally meaningless and amount to a waiver of an objection." *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209–10 (E.D. Mich. 2018); *see also Near v. Eli Lilly & Co.*, No. 07-00006, 2008 WL 11334459, at *1 (S.D. Iowa July 16, 2008) ("[T]he use of boilerplate, unsubstantiated objections is rejected by federal courts.").

Federal courts have acknowledged that "just as Rule 34(b)(1)'s reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party, a non-party's Rule 45(d)(2)(B) objections to those requests should be subject to the same

8

requirements facing a party objecting to discovery under Rule 34." *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015). That is, the objections "are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *Id.*; *see also Ctr. for Individual Rights v. Chevaldina*, No. 16-20905-CIV, 2017 WL 5905191, at *5 (S.D. Fla. Nov. 29, 2017); *Mears v. Jones*, No. 1:17-CV-6-KS-MTP, 2017 WL 8682109, at *1 (S.D. Miss. June 13, 2017); *Paulino v. Dollar Gen. Corp.*, No. 3:12-CV-75, 2013 WL 1773892, at *13 (N.D.W. Va. Apr. 25, 2013).

At least five of the Zoo's objections are bare statements of the purported legal basis for the objection with no description of the deficiency or explanation of the objection. [Obj. 1-3, 5 (allegation of "unduly burdensome"), and 9.] Several others attempt to connect the objection to this matter, but are entirely false and/or do not appear to be made in good faith. [Obj. 4 (Defendants' conduct is "unrelated to the DeYoung facility"), 6 (inspection subpoena "contains no limitations on the time, scope, attendees, and protocol"), 10 (PETA can obtain and did not request the discovery from Defendants).] Accordingly, the Zoo's nonspecific and broad objections do not comply with the Federal Rules of Civil Procedure and should be considered waived.

### D. The Zoo's Substantive Objections to the Subpoenas Are Otherwise Without Merit

First, the Zoo "objects to the Subpoenas in their entirety because they are not relevant to the [MPF Litigation]" and "not reasonably calculated to lead to discovery of admissible evidence." [Objections 2, 4.] Relevance, for purposes of Rule 26, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Additionally, "It is axiomatic that the 'discovery of evidence ... is permitted if it is at all possible that it will lead to the discovery of admissible evidence.'" *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1097 (6th Cir. 1994) (quoting 4 James Wm. Moore, Moore's Federal Practice § 26.56(4)). As discussed above, the Eastern District of Missouri confirmed that the

9

chimpanzees transferred to the Zoo and the conditions in which they are held remain at issue in the MPF Litigation.

Second, the Zoo "objects to the Subpoenas in their entirety because they are not proportional to the needs of the case" and are "unduly burdensome." [Obj. 3, 5.] "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir.) (citation omitted), *reh'g denied* (May 17, 2018), *cert. denied sub nom. New Prod. Corp. v. Dickinson Wright, PLLC*, 139 S. Ct. 289 (2018). The Subpoenas relate only to the manner in which these five specific chimpanzees were acquired, are held, and are cared for at the Zoo. Specifically, the Subpoenas seek records and testimony regarding their acquisition, and records, testimony, and an inspection regarding the manner in which they are or were held, the areas that pertain to their maintenance and care, and the Zoo's practices and procedures for caring for them. This evidence is central to the MPF Litigation, *see* Section I.C., *supra*, and can be obtained only from the Zoo. Additionally, the temporal scope of the Subpoenas is necessarily circumscribed, as three of the chimpanzees were not transferred to the Zoo until December 2016, and the remaining chimpanzees were not transferred to the Zoo until July 2017. The Subpoenas, which relate to the acquisition and care of only five animals over a span of less than eighteen months at the time of service, are therefore clearly proportional to Plaintiffs' needs in the MPF Litigation and not unduly burdensome.[2]

Third, the Zoo objects to the inspection "because it is overbroad in scope and vague and ambiguous as written, in that it contains no limitations on the time, scope, attendees, and protocol of the proposed inspection." [Obj. 6.] Yet the subpoena specifically described its

---

[2] The Zoo also alleges that the Subpoenas are "intended to harass and annoy DeYoung, a party with which PETA has previously been engaged in litigation in Michigan." In addition to Plaintiffs' demonstrated need for this evidence, the Zoo fails to acknowledge that *it filed* the litigation *against PETA*—a virtually identical claim, by the same counsel, as filed by Defendants' (and dismissed) in the MPF Litigation.

10

"scope," "protocol," time, and date. [Goodman Decl., Ex. I.] While PETA has no issue with identifying the attendees in advance of an inspection, PETA is under no obligation to do so in the subpoena, nor would the failure to do so make the demand overbroad, vague, or ambiguous.

Fourth, the Zoo objects to the Subpoenas "without a fully-executed Protective Order in place." [Obj. 7.] This is, simply, not a valid objection, and is all the more invalid given Plaintiffs good faith attempts to negotiate an order that were met with the Zoo's unreasonable demands.

Fifth, the Zoo "objects to the Subpoenas to the extent that they can be read to implicate two different jurisdictions, namely federal courts in both Michigan and Wisconsin." [Obj. 8.] In an effort to provide the most convenient location to the Zoo for a deposition, PETA identified a location in Wisconsin far nearer to the Zoo than any available location within Michigan. Upon conferring, the parties agreed that the deposition would be held at the Zoo's preferred location.

Sixth, the Zoo "objects that the production is unreasonably vague in that it does not restrict the documents to those documents in the possession of DeYoung." [Obj. 11.] However, Rule 45 specifically provides that a subpoena to produce documents commands the production of "designated documents … in that *person's possession, custody, or control*." Fed. R. Civ. P. 45(a)(1)(A)(iii) (emphasis added). Further, with respect to the Zoo's objection of the location for production, upon conferring, the parties understood that the Zoo was not being requested to, and would not be required to, physically deliver documents to Plaintiffs' counsel in Missouri.

Finally, the Zoo "objects to the Subpoenas in their entirety as written because PETA can obtain the requested information or its substantial equivalent from the parties to this lawsuit and because, on information and belief, PETA has failed to request such information in discovery. [Obj. 10.] This objection is entirely false, as PETA has not obtained "the requested information or its substantial equivalent" in the MPF Litigation following nearly a year of written discovery and depositions of Defendants and other relevant third parties. Nor does the Zoo even attempt to explain how its own records and information regarding these five chimpanzees, or how an inspection of the chimpanzees, the facilities in which they are held, and the care that they receive at the Zoo, could potentially be obtained by any party other than the Zoo.

## III. CONCLUSION

For the foregoing reasons, PETA respectfully requests that the Court grant the Motion and issue an order compelling the Zoo to produce any and all documents in its possession or control that are responsive to the subpoena by December 28, 2018; to allow PETA to inspect the Zoo by January 11, 2019; and to produce a representative for deposition by January 25, 2019.

Dated: December 18, 2018

Respectfully submitted,

/s/ Jonathan B. Frank
Jonathan B. Frank (Michigan Bar No. 42656)
Maddin, Hauser, Roth and Heller, PC
28400 Northwestern Hwy., 2nd Fl.
Southfield, MI 48034
Telephone: (248) 208-0715
Facsimile: (248) 359-6186
JFrank@maddinhauser.com

*Attorney for Plaintiff*